1 **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Loza, a single man, | No. CV09-1118 PHX DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| American Heritage Life Insurance Company, a Florida corporation, | |
| Defendant. | |

Plaintiff Michael Loza has filed a motion to amend his complaint to add Allstate Corporation as a defendant. Dkt. #36. The motion is fully briefed. Dkt. ##50, 53. For the reasons that follow, the Court will deny Plaintiff's motion.[1]

**I.    Background.**[2]

On July 21, 2008, Plaintiff filed a complaint in state court against American Heritage, Allstate Insurance Company, Allstate Life Insurance Company, and Allstate Assurance Company, alleging various tort and contract claims and requesting an award of punitive damages. Dkt. #1-2 at 3-11. Plaintiff did not name Allstate Corporation. Plaintiff

---

[1] Plaintiff's request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] Citations to pages in the parties' filings will be to the page numbers applied by the Court's electronic docket at the top of each page.

subsequently moved to dismiss every Defendant except American Heritage. The state court granted the motion on October 22, 2008. Dkt. #1-3 at 2-3, 10. On November 7, 2008, Plaintiff filed a motion seeking to amend his complaint to again add the Allstate Defendants. The state court denied the motion. *Id.* at 12-13; Dkt. #1-4 at 64.

On May 26, 2009, American Heritage removed the case to this Court. Dkt. #1. Discovery was completed on October 1, 2009, and dispositive motions were filed by both parties on the deadline of October 23, 2009. Dkt. #46, 48. Plaintiff now seeks to add Allstate Corporation, which has never been a party to this action, as a defendant. Dkt. #36. Plaintiff argues that Allstate Corporation is the parent and liable for the acts of American Heritage. *Id.* at 1. American Heritage argues the amendment would be futile because the two companies are separate and distinct. Dkt. #50.

**II. Legal standard.**

Rule 15 of the Federal Rules of Civil Procedure declares that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). But the liberal policy favoring amendments is not unlimited. Motions to amend may be denied if the district court finds there has been (1) undue delay, (2) bad faith or dilatory motives on the part of the movant, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, or (5) futility of the proposed amendment. *Id.*

**III. Corporate Separateness.**

The parties agree that Plaintiff's proposed amendment is futile if Allstate Corporation and American Heritage cannot be regarded as the same entity. Dkt. #53 at 7; Dkt. #50 at 9. Arizona law recognizes a presumption of corporate separateness under which a parent corporation is not liable for the actions of a subsidiary. *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195 (Ariz. App. 1994). To prove otherwise, a plaintiff must show (1) unity of control and (2) that observance of the corporate form would promote injustice or fraud. *Gatecliff v. Great Rep. Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991).

**A. Unity of Control.**

The parties agree that the controlling standard is found in *Gatecliff*. 821 P.2d 725. Under *Gatecliff*, unity of control is shown when a parent exercises "substantially total control over the management and activities" of its subsidiary. *Id.* at 728 (citations and internal quotations omitted). A plaintiff may prove substantially total control "by showing, among other things: stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence." *Id.* The Court will consider each of these factors.

1. Allstate Corporation owns the stock of American Heritage. Dkt. #36 at 3.

2. Plaintiff has shown that the two companies share one officer and one director out of 28 officers and 16 directors. Dkt. #53 at 7-8; #50-1 at 45-51.

3. Plaintiff has not shown that Allstate Corporation finances American Heritage. Plaintiff notes that Allstate Corporation's annual SEC Form 10-K includes American Heritage's financial information, and argues that this fact shows Allstate must finance American Heritage. Dkt. #53 at 8. But the few pages of the 10-K provided by Plaintiff say nothing about Allstate Corporation financing American Heritage (Dkt. #53, Ex. F), and Plaintiff has provided no authority to suggest that the common practice of including wholly-owned subsidiaries in a Form 10-K somehow shows that the parent finances the subsidiary.

4. American Heritage concedes that Allstate Corporation pays its employees, but Plaintiff fails to show that Allstate Corporation pays for any other expenses of American Heritage. Dkt. #50 at 10.

5. Plaintiff fails to show that American Heritage ignores or neglects corporate formalities. The evidence presented by the parties shows that American Heritage maintains its own headquarters in a state different from Allstate Corporation, files its own corporate reports, and underwrites its own insurance policies. *Id.* at 11.

6. Plaintiff has shown similarity of the two companies' logos. *Id.*

1. 7. Plaintiff claims that he did not know of American Heritage's existence, but American Heritage has produced numerous documents provided to Plaintiff showing that his insurance was with American Heritage, not Allstate Corporation. *Id.* at 2-5. Even if Plaintiff did not notice American Heritage's existence, he has not shown that American Heritage or Allstate Corporation somehow hid it.

In sum, Plaintiff has shown that Allstate Corporation owns the stock of American Heritage, that the two corporations have one officer and one director in common out of a total of 44 officers and directors, that Allstate Corporation pays the salaries of American Heritage employees, and that the companies have similar logos. On the other hand, the companies have largely separate officers and directors, Plaintiff has not shown that Allstate Corporation finances American Heritage, Plaintiff has not shown that Allstate Corporation pays expenses of American Heritage other than salaries, there is no evidence that the companies fail to observe corporate formalities, American Heritage maintains its own headquarters in a state different from Allstate Corporation, and there is no evidence that American Heritage's existence was somehow hidden from Plaintiff. Given this evidence, the Court concludes that a reasonable jury could not find that Allstate Corporation has "substantially total control over the management and activities" of American Heritage. *Gatecliff*, 821 P.2d at 728 (holding that substantially total control existed when the companies shared a vice president, when the parent performed virtually every service necessary for the subsidiary's operation, and when the two companies failed to distinguish between themselves in day to day operations). Plaintiff has not overcome the presumption of corporate separateness. *See Deutsche Credit Corp.*, 876 P.2d at 1190.

**B.  Injustice and Fraud.**

Nor does the Court find that observance of the corporate form would promote fraud or injustice. Plaintiff's motion asserts that the jury should be permitted to consider financial information of Allstate Corporation when assessing punitive damages. Dkt. #36 at 5. The Court cannot conclude, however, that the prospect of larger punitive damages is the kind of fraud and injustice addressed in the *Gatecliff* analysis, and Plaintiff has provided no authority

to suggest it is relevant.[3] Nor has Plaintiff explained why punitive damages awarded in the absence of Allstate Corporation would be inadequate.

Plaintiff argues in his reply memorandum that it would be unjust to permit Allstate Corporation to "hide" behind American Heritage while actually controlling the corporation. Dkt. #53 at 11. But this argument necessarily presumes that Allstate Corporation does control American Heritage, a fact Plaintiff has not established, as explained above.

Finally, Plaintiff argues for the first time in his reply memorandum that Allstate Corporation's medical director makes decisions regarding medical issues, including decisions regarding the cancer screening test at issue in this case, and that Allstate therefore should be held liable for Plaintiff's damages. *Id.* at 10. The Court will not consider this kind of a factual assertion made for the first time in reply. *Delgadillo v. Woodford*, 527 F.3d 919, 930 n. 4 (9th Cir.2008).[4]

**IV.  Undue Delay.**

The Court also concludes that Plaintiff delayed unduly in seeking to amend his complaint. Plaintiff first named Allstate entities as defendants in July of 2008, and admits he learned that Allstate Corporation was the parent of American Heritage in December of 2008. Dkt. #36 at 2; *see* Dkt. #1-3 at 21-26. And yet Plaintiff delayed his motion to amend until after expert witnesses had been disclosed, only two days of discovery remained, and dispositive motions were at hand. *See* Dkt. #25. His more than nine month delay was

---

[3] The Arizona Supreme Court in *Gatecliff* found injustice when observance of the corporate form could have "den[ied] plaintiffs recovery from the party responsible for cancelling their insurance policy" and could have "permit[ed] the two corporations to confuse plaintiffs and frustrate their efforts to protect their rights before suit." 821 P.2d at 729. Plaintiff will not be denied recovery if the corporate form is respected, nor will Plaintiff's efforts to protect his rights be frustrated.

[4] Plaintiff may respond that the medical director was not deposed until October 8, 2009, after the motion to amend was filed. But Plaintiff first sought to name Allstate defendants in July of 2008, and knew by November of 2008 that Allstate Corporation owned American Heritage. Dkt. #36 at 2. Plaintiff had ample opportunity to complete any discovery necessary for a motion to amend well in advance of the closing stages of this case.

unreasonable. *See AmeerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("We have held that an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable."). If the Court were to grant Plaintiff's motion, issues of corporate form, corporate formalities, corporate financing, and corporate governance would be injected into this case at a time when discovery is complete, experts have been disclosed, and dispositive motions have been filed. Both American Heritage and the Court would be prejudiced if litigation of these substantial questions commenced when the discovery and motion schedule were complete.

Plaintiff argues that the Court's Case Management Order – entered after the case had been removed from state court – allowed the parties 60 days to amend pleadings, that he mentioned the possibility of adding Allstate Corporation as a defendant in the parties' Rule 26(f) filing, and that he filed his motion to amend within the 60 days of the Case Management Order. These assertions are all correct, but Plaintiff made no effort during the case management process to explain to the Court the significance of such an amendment, nor did he assert that more time was needed to determine whether the amendment would be appropriate. From the beginning of this case, Plaintiff has possessed all the discovery tools necessary to determine if this amendment was warranted. From at least December of 2008 Plaintiff has known that Allstate Corporation owned American Heritage. Dkt. #36 at 2. Plaintiff, not Defendant or the Court, controlled the timing of his motion. The fact that Plaintiff mentioned the possibility of such an amendment during the case management process does not justify his delay, nor does it constitute some kind of informed consent by Defendant or the Court to a prejudicially untimely motion. Plaintiff chose to file the motion at the very close of discovery, and the Court properly may consider whether such a choice constitutes undue delay.

Entry of a Rule 16 deadline for amending pleadings does not eliminate the timeliness considerations of Rule 15. To the contrary, motions to amend may be found untimely even if they are brought within the time allowed by a scheduling order. *AmeerisourceBergen*, 465 F.3d at 953 (holding that district court did not abuse its discretion in denying as untimely a

motion brought within the time allowed under the Rule 16 order). As the Ninth Circuit has explained: "In assessing timeliness, we do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Id*. Plaintiff knew in December of 2008 that Allstate Corporation was the parent of American Heritage. The Court concludes that he delayed unduly, and to the prejudice of Defendant and the Court, by waiting until now to file a motion to amend.

**IT IS ORDERED** that Plaintiff's motion to amend (Dkt. #36) is **denied**.

DATED this 9th day of December, 2009.

_____
David G. Campbell
United States District Judge