**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Loza, a single man, | No. CV09-1118 PHX DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| American Heritage Life Insurance Company, a Florida corporation, | |
| Defendant. | |

Plaintiff Michael Loza has filed a motion for partial summary judgment (Dkt. #48) and Defendant American Heritage Life Insurance Company has filed a motion for summary judgment (Dkt. #46). Both motions are fully briefed. Dkt. ##56, 58, 67, 70. For reasons that follow, the Court will grant American Heritage's motion for summary judgment and deny Loza's motion for partial summary judgment.[1]

**I.     Background.**

On January 3, 2007, Loza became eligible for health insurance through his employer. On January 10, 2007, Loza visited Dr. Jay Raymock, a family practitioner, for a physical examination. Dkt. #67 at 3. According to Loza, he told Dr. Raymock that "he had difficulty getting his stream going and some urgency" (Dkt. #47, ¶ 8; Dkt. #63, ¶ 8) and that "he had

---

[1] Plaintiff's request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

1  a past history of an enlarged prostate" (Dkt. #47, ¶ 10; Dkt. #63, ¶ 10).  Loza also told Dr.
2  Raymock that his father had been diagnosed with prostate cancer.[2] Dkt. #47-2 at 25-26.  Dr.
3  Raymock performed a rectal examination which revealed that Loza had an enlarged prostate
4  (Dkt. #47, ¶ 16; Dkt. #63, ¶ 16) and ordered a prostate specific antigen test ("PSA test")
5  "because of [Loza's] family history, certain symptoms, and because it is a routine screening
6  at Mr. Loza's age" (Dkt. #63, ¶ 21).  A PSA test is often used as a routine screening test in
7  men, but it also is used to "indicate multiple medical conditions; including benign prostate
8  enlargement, benign prostatic hyperplasia (BPH), inflammation, urinary tract infection,
9  increased sexual activity, age, and cancer."  Dkt. #63, ¶ 21.  On January 18, 2007, Loza
10 received the results of his PSA test and was referred to a urologist because the test showed
11 an elevated level of prostate specific antigens in his blood.  Dkt. #67 at 3.

12       On January 24, 2007, Loza decided to apply for a cancer insurance policy with
13 American Heritage.  *Id.* at 3-4.  Jody McCandless, Loza's girlfriend, completed the
14 application for Loza by phone with Judith Biggs, an insurance agent.  *Id.* at 4.  During the
15 application process, Biggs asked the following question:

> Is any person to be insured currently undergoing any diagnostic test for, now being treated for, or ever been treated for, cancer of any malignancy which includes: carcinoma; sarcoma; Hodgkin's Disease; leukemia; lymphoma; or any malignant tumor?

19 Dkt. #47-5 at 48.  McCandless answered "no" to the question.  Dkt. #67 at 4.  Biggs
20 subsequently forwarded the application to Loza, who signed it with the representation that
21 all answers were "true, complete, and correctly recorded."  Dkt. #47-5 at 48.  Based on the
22 application answers, Loza was approved for the policy.

23       On June 4, 2007, Loza was diagnosed with prostate cancer.  *Id.*  On June 15, 2007,

---

[2] In his statement of facts in support of his response to American Heritage's motion for summary judgment, Loza disputes American Heritage's factual assertion that "his father had died from prostate cancer." Dkt. #63 at 2. Loza does not dispute, however, that his father was diagnosed with prostate cancer or that Dr. Raymock ordered the PSA test based, in part, upon Loza's family history. Dkt. #63, ¶ 21.

Loza filed a claim for benefits under the cancer policy. *Id.* at 5. Upon receiving Loza's claim, American Heritage initiated a claim investigation, during which it learned about the PSA test, which it considered to be a "diagnostic test for . . . cancer" as contemplated by the question asked during Loza's application process. *Id.* On August 28, 2007, American Heritage denied Loza's claims and cancelled his policy on the ground that he had made a misrepresentation in his application by stating that he had not had any diagnostic test for cancer. *Id.* After cancelling the policy, American Heritage refunded all of Loza's premiums, but due to a clerical error his policy was left active on American Heritage's computers and premiums continued to be deducted from his paycheck. Dkt. #70 at 7. Upon learning of the mistake several months later, American Heritage refunded the money with interest. *Id.* at 8.

On July 21, 2008, Loza filed this lawsuit in Arizona state court alleging breach of contract, bad faith, and negligent and intentional infliction of emotional distress because of American Heritage's decision to cancel Loza's policy. Dkt. #1-2 at 3-11. American Heritage removed the case to this Court. Dkt. #1.

## II. Legal standard.

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III. American Heritage's motion.

American Heritage has moved for summary judgment on all of Loza's claims and his request for punitive damages. The Court will consider each claim in turn.

**A. Breach of contract.**

Loza alleges that American Heritage breached the insurance contract by failing to pay benefits and by cancelling the policy. Dkt. #1-2 at 8. American Heritage contends that the policy is void under Arizona law based on misrepresentations made in Loza's insurance application.

The parties agree that A.R.S. § 20-1109 governs the denial of claims and the cancellation of an insurance policy. The statute provides:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:
>
> 1. Fraudulent.
>
> 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.
>
> 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

All three parts of the statute must be met for an insurance company to deny recovery. *Valley Farms, Ltd. v. Transcontinental Ins. Co.*, 78 P.3d 1070, 1074 (Ariz. App. 2003). American Heritage contends that there is no genuine dispute of material fact as to whether all three parts are satisfied and, as a result, it is entitled to summary judgment on the breach of contract claim. The Court agrees.

**1. Part One: Fraud.**

For purposes of proving fraud under A.R.S. § 20-1109, an insurer generally need only prove legal fraud (which does not require an intent to deceive), not actual fraud (which does require an intent to deceive). *Mann v. New York Life Ins. & Annuity Corp.*, 222 F. Supp. 2d 1151, 1154 (D. Ariz. 2002). American Heritage argues that the PSA test performed on Loza only a few weeks before he applied for cancer insurance was a diagnostic test for cancer, and that Loza committed legal fraud by answering "no" when asked whether he had undergone

such a test. Loza makes three primary arguments in response: (1) the term "diagnostic test" is ambiguous, this ambiguity must be construed in his favor, and, when so construed, his answer was not fraudulent; (2) a PSA test is not a diagnostic test for cancer; and (3) the question called for an opinion, meaning that American Heritage must prove that Loza committed actual fraud. The Court finds none of these arguments persuasive.

When interpreting an insurance contract, Arizona courts look to the plain and ordinary meaning of the words used. *Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1132 (1982). Ambiguity exists only if "'the court is unable to determine how the language of the policy applies to the specific facts of the case.'" *Employers Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 515 (2008) (quoting *Preferred Risk Mut. Ins. Co. v. Lewallen*, 703 P.2d 1232, 1234 (Ariz. App.1985)). "Accordingly, the core question is whether the policy language is, in fact, ambiguous under the facts of this case." *Id.* "Interpretation of a contract is a question of law for the court when its terms are unambiguous on its face." *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. App. 1975).

The Oxford English dictionary defines "diagnostic" as "[o]f value for purposes of diagnosis, discrimination, or identification." Oxford English Dictionary, 2d Ed. 1989. The Merriam-Webster dictionary defines it as "serving to distinguish or identify." Merriam-Webster Online Dictionary, 2010. Thus, the plain and ordinary meaning of "diagnostic test" is a test used to discriminate, distinguish, or identify. American Heritage's application thus asked whether Loza was currently undergoing a test to discriminate, distinguish, or identify cancer as the cause of his condition.

Viewing the facts in the light most favorable to Loza, "[a] PSA test measures the amount of prostate-specific antigen in the blood," "can only monitor a naturally occurring biological compound in the body," and "cannot directly diagnose cancer." Dkt. #63 at 18. The test often is used as a routine screening test in men of Loza's age, but can also be used to "indicate multiple medical conditions; including benign prostate enlargement, benign prostatic hyperplasia (BPH), inflammation, urinary tract infection, increased sexual activity, age, *and cancer*." *Id;* Dkt. #63, ¶ 21 (emphasis added). The relevant question under Arizona

law is not whether PSA tests generally can be described as diagnostic tests, but "how the language of the policy applies to the specific facts of the case." *Employers Mut.*, 183 P.3d at 515.

The undisputed facts of this case show that the PSA test was a diagnostic test for cancer. When Loza visited Dr. Raymock for a physical, he told the doctor that "he had difficulty getting his stream going and some urgency" (Dkt. #47, ¶ 8; Dkt. #63, ¶ 8) and that "he had a past history of an enlarged prostate" (Dkt. #47, ¶ 10; Dkt. #63, ¶ 10). Loza also informed Dr. Raymock that his father had prostate cancer. Dkt. #47-2 at 25-26. Dr. Raymock performed a rectal examination which revealed that Loza had an enlarged prostate (Dkt. #47, ¶ 16; Dkt. #63, ¶ 16) and ordered a PSA test "because of family history, certain symptoms, and because it is a routine screening at Mr. Loza's age" (Dkt. #63, ¶ 21). Although routine screening is mentioned, these undisputed facts show that Dr. Raymock ordered the PSA test because Loza complained of specific symptoms, Dr. Raymock's exam disclosed additional symptoms, and Loza had a family history of prostate cancer. Clearly, the doctor ordered the PSA test for the purpose of detecting medical conditions that might be causing Loza's symptoms, including cancer.

"A contract is not ambiguous just because the parties . . . disagree about its meaning. Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning." *In re Estate of Lamparella*, 109 P.3d 959, 963 (Ariz. App. 2005) (internal citations omitted). Loza proposes no alternative meanings for the phrase "diagnostic test," and the Court concludes that when such a test is performed for the specific purpose of investigating the cause of particular symptoms, the test clearly is diagnostic – it is given for the purposes of diagnosing, discriminating, or identifying the existence of medical conditions. And when one of the possible causes being investigated is prostate cancer, the test clearly is a diagnostic test for cancer. *See Eley v. Boeing Co.*, 945 F.2d 276, 279 (9th Cir. 1991) (stating that a test is diagnostic when it is used to recognize the presence or possible presence of disease). Thus, as applied to the facts of this case, "diagnostic test" is not ambiguous.

Under A.R.S. § 20-1109, an insurer must prove actual fraud if the question called for an opinion rather than a factual response. *Russell v. Royal Maccabees Life Ins. Co.*, 974 P.2d 443, 450 (Ariz. App. 1998). Loza argues that the question asked of him was an opinion question and that, as a result, American Heritage must prove actual fraud, which it cannot do. The standard for distinguishing between opinion and fact questions has been explained by the Arizona Supreme Court:

> [I]f a question [asked in an insurance application] is one where the facts are presumably within the personal knowledge of the insured, and are such that the insurer would naturally have contemplated that his answers represented the actual facts, if the representation be false, the insured is guilty of legal fraud, although as a matter of fact he may not have intended to deceive the insurer; but that where the question is of such a nature that a reasonable man would know that it represented merely the opinion of the insured, there must be an actual intent to deceive and bad faith on the part of the insured.

*Equitable Life Assur. Soc'y v. Anderson*, 727 P.2d 1066, 1068 (Ariz. App. 1986) (quoting *Illinois Bankers' Life Assn. v. Theodore*, 34 P.2d 423 (Ariz. 1934)). "Whether a question elicits a factual response or an opinion is a matter for the trier of fact to decide based on the particular facts of each case, unless reasonable persons could not differ as to whether the answer was a statement of opinion or a statement of fact." *Anderson*, 727 P.2d at 1070.

In *Anderson*, the court considered whether asking if an individual was a habitual drug user elicited an opinion or a fact. The insurance applicant contended that it was an opinion because reasonable people could differ as to the meaning of the word "habitual." The court, however, based its decision on the specific facts of the case – that the applicant had regularly used heroin – and determined that although the word "habitual" might be open to opinion in certain cases, in this applicant's case the question did not call for an opinion because the applicant clearly and unambiguously was a habitual user.

As in *Anderson*, the facts in this case dictate that American Heritage's question called for a fact, not an opinion. Loza's doctor ordered the PSA test for the specific purpose of investigating Loza's prostate symptoms, one possible cause of which was prostate cancer. An insurer reasonably would expect that Loza knew he had received the test and that it was given after he complained of specific symptoms to Dr. Raymock and was determined to have

- 7 -

an enlarged prostate. The Court accordingly concludes that the question in this case called for a factual response. As a result, American Heritage need only prove legal fraud. *Mann*, 222 F. Supp. 2d at 1154.

In reaching this conclusion, the Court notes that legal fraud does not require intent to deceive. A.R.S. § 20-1109 allows insurance companies to rescind policies on the basis of legal fraud not because the applicant has acted wrongly, but because the insurance company has issued a policy on the basis of incorrect facts – facts which, if correctly disclosed, would have led the company to deny coverage. *See Mann*, 222 F. Supp. 2d at 1154. The idea is to prevent the injustice of imposing insurance obligations in circumstances where such obligation never would have been created had accurate information been disclosed. In this case, the undisputed facts show that the PSA test was ordered because Loza had urinary difficulties, an enlarged prostate, and a family history of prostate cancer. Dkt. #63, ¶ 21. Dr. Raymock was seeking to determine the cause of Loza's symptoms, and one possible cause was prostate cancer. Such a test clearly fell within the plain meaning of a "diagnostic test for cancer," and the failure to disclose the test, even if innocent, rightly invokes the legal fraud doctrine.

### 2. Part Two: Materiality.

American Heritage must also prove that there is no genuine issue of material fact as to whether Loza's legal fraud was material to its acceptance of the risk of issuing Loza's cancer policy. The test of materiality is whether the facts, if truly stated, might have influenced a reasonable insurer in deciding whether to accept the risk. *Valley Farms, Ltd.*, 78 P.3d at 1074. American Heritage's underwriting department has declared that it would not have issued the policy to Loza had he answered "yes" to question 6. Dkt. #47, ¶ 131. Loza does not dispute the truth of this declaration, but continues to argue that it was unreasonable for American Heritage to believe that the PSA test was diagnostic. Dkt. #63, ¶ 131. As discussed above, the Court does not agree with this argument.

Loza also argues that the test was not material because, if it was, American Heritage would specifically have asked if Loza had undergone a PSA test. Dkt. #67 at 14. The Court

does not agree that the materiality of a fact is determined by how the insurer phrases a question. Question 6 was not ambiguous given the facts of this case and American Heritage has established without contradiction that it would not have issued the policy had Loza answered the question "yes." This is sufficient to satisfy the Arizona test for materiality – that the facts, if truly stated, might have influenced a reasonable insurer in deciding whether to accept the risk. *Valley Farms, Ltd.*, 78 P.3d at 1074.

### 3. Part Three: Non-issuance.

American Heritage must prove that it would not have issued the policy had Loza been truthful. American Heritage has presented uncontroverted evidence that it would not have issued the policy had Loza answered "yes" to question 6.

### 4. Conclusion.

On the basis of undisputed facts, the Court concludes that American Heritage was entitled to rescind the policy under A.R.S. § 20-1109. The Court therefore will enter summary judgment on Loza's breach of contract claim.[3]

## B. Bad faith.

In Arizona, a plaintiff attempting to prove insurance bad faith must show "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). Loza cannot show the absence of a reasonable basis for denying benefits of the policy because American Heritage gave a basis that is reasonable as a matter of law – that Loza made a legal misrepresentation in his application. Loza therefore cannot prove bad faith and American Heritage is entitled to summary judgment on this claim.

## C. Negligent and intentional infliction of emotional distress.

To establish a claim for negligent infliction of emotional distress, Loza must prove

---

[3] Because the Court is granting summary judgment on the ground that American Heritage was entitled to rescind the policy, the Court will not consider American Heritage's argument that Loza's condition was pre-existing.

physical injury. *Rayes v. United States*, 967 F. Supp. 1162, 1165 (D. Ariz. 1997). It is undisputed that Loza received no physical injury from the actions of American Heritage.

Loza admits that there can be no recovery for intentional infliction of emotional distress absent a loss of property caused by American Heritage. Dkt. #67 at 17. Because American Heritage properly cancelled Loza's policy and denied Loza's claim, there is no loss of property on which an intentional infliction claim can stand. American Heritage is entitled to summary judgment on these claims.

### D. Punitive damages.

Because all of his other claims are being dismissed, Loza can show no actual damages on which punitive damages can stand. *See Wyatt v. Wehmueller*, 806 P.2d 870, 874 (Ariz. 1991) ("A plaintiff must be entitled to actual damages before being entitled to punitive damages.").

## IV. Loza's motion.

Loza requests summary judgment on three issues: (1) that American Heritage waived its right to rescind Loza's policy, (2) that Loza did not make a misrepresentation in his application, and (3) that Loza, if he did make a misrepresentation, did not make a fraudulent misrepresentation. Dkt. #48. The Court has granted summary judgment to American Heritage on issues (2) and (3) and will not discuss them again. The Court will, however, consider Loza's argument that American Heritage waived its right to rescind his policy.

Loza argues that he told American Heritage that his primary physician was Dr. Raymock and provided it with his contact information. Dkt. #48 at 7-8. American Heritage did not contact Dr. Raymock to ask if Loza had received a PSA test. Loza contends that American Heritage was obligated to perform such due diligence and, having failed to do so, is estopped from relying on Loza's misrepresentation to void the policy. *Id.* at 8. Loza provides no authority for the proposition that an insurance company must always conduct due diligence to determine whether an applicant is truthful in his application. An insurance company in fact has no duty to investigate statements in an application unless "the information disclosed to the insurer is such as to have caused a reasonably prudent insurer

- 10 -

to investigate further." *CenTrust Mortg. Corp. v. PMI Mortg. Ins. Co.*, 800 P.2d 37, 43 (Ariz. App. 1990).

Loza argues that because American Heritage maintains that a PSA test is a diagnostic test for cancer, American Heritage should have known that Loza was likely to provide inaccurate information and, as a result, was obligated to investigate. Dkt. #48 at 8. Loza provides no reason, however, why American Heritage should have thought Loza's answer was inaccurate, nor does he provide any evidence that American Heritage had other reasons to investigate answers Loza had represented to be truthful.

Loza also argues that this Court cannot grant summary judgment to American Heritage because of an earlier state court ruling. Dkt. #67 at 1. In state court, Loza filed a motion for summary judgment against American Heritage, arguing that it had waived its right to rescind the policy because it continued to take premiums from Loza after the policy was cancelled. *Id.* at 1-2. In ruling on his motion, the state court stated the following:

> There is no question but that Defendant received premium payments from Plaintiff after Defendant rescinded the insurance policy. There is a material question of fact, however, whether those payments were retained by Defendant because it considered the policy valid for that purpose while considering the policy void for coverage purposes. <u>McCollum v. Continental Casualty Co.</u>, 151 Ariz. 492 (App. 1986). The issue of waiver must be considered by the trier of fact.

*Id.* at 2. Loza contends that because the state court determined that there was an issue for the jury on the waiver issue, this Court is prohibited from granting summary judgment to American Heritage. *Id.* But the state court order denied *Loza's* motion for summary judgment and was issued before the parties had conducted discovery on the waiver issue. Dkt. #70 at 9. Loza has since conducted discovery, and has pointed to no evidence showing that American Heritage waived its right to cancel the policy, knew that it was still collecting premiums from Loza, or actually did not cancel the policy.

Moreover, a summary judgment ruling is interlocutory and subject to reconsideration by the Court at any time. *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979). The decision by the state court was made on a record that was not fully developed. On the current record, there is no evidence that American Heritage waived its right to cancel

the policy, and Loza has not pointed to any. As a result, the Court finds an absence of material fact on the issue of waiver and will grant American Heritage's motion for summary judgment.

**IT IS ORDERED:**

1. American Heritage's motion for summary judgment (Dkt. #46) is **granted**.
2. Loza's motion for partial summary judgment (Dkt. #48) is **denied**.
3. The Clerk of Court shall terminate this action.

DATED this 24th day of February, 2010.

_____
David G. Campbell
United States District Judge