**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Loza, a single man,<br><br>    Plaintiff,<br><br>vs.<br><br>American Heritage Life Insurance Company, a Florida corporation,<br><br>    Defendant. | No. CV-09-01118-PHX-DGC<br><br>**ORDER** |

On February 24, 2010, this Court granted summary judgment to Defendant American Heritage Life Insurance Company on Plaintiff Michael Loza's breach of contract, bad faith, and negligent and intentional infliction of emotional distress claims related to American Heritage's decision to cancel Loza's insurance policy after he made a claim for prostate cancer coverage. Doc. 73. Loza appealed, and the Ninth Circuit reversed, finding that American Heritage was not entitled to cancel Loza's policy due to misrepresentation because the question on the insurance application asking if Loza was undergoing a "diagnostic test" for cancer was ambiguous. Doc. 86-1 at 4. The Ninth Circuit remanded for the Court to consider American Heritage's second argument, not previously addressed, that Loza's insurance claim was nonetheless precluded because it was based on an uncovered pre-existing condition. *Id.* at 6.

American Heritage filed a motion for summary judgment on the remanded action (Doc. 96), and Loza filed a cross motion on his claims for breach of contract and bad faith. Doc. 102. The motions have been fully briefed. Docs. 100, 106; 106, 108. The

Court heard oral arguments on March 14, 2012.  For the reasons stated below, the Court will grant American Heritage's motion and deny Loza's cross motion.

**I.      Background.**

On January 3, 2007, Loza became eligible for health insurance through his employer.  On January 10, 2007, Loza visited Dr. Jay Raymock, a family practitioner, for a physical examination.  Doc. 67 at 3.  According to Loza, he told Dr. Raymock that "he had difficulty getting his stream going and some urgency" (Doc. 47, ¶ 8; Doc. 63, ¶ 8) and that "he had a past history of an enlarged prostate."  Doc. 47, ¶ 10; Doc. 63, ¶ 10.  Loza also told Dr. Raymock that his father had been diagnosed with prostate cancer.  Doc. 47-2 at 25-26.  Dr. Raymock performed a rectal examination which revealed that Loza had an enlarged prostate (Doc. 47, ¶ 16; Doc. 63, ¶ 16), and ordered a prostate specific antigen test ("PSA test") "because of [Loza's] family history, certain symptoms, and because it is a routine screening at Loza's age" (Doc. 63, ¶ 21).  A PSA test is often used as a routine screening test in men, but it also is used to "indicate multiple medical conditions; including benign prostate enlargement, benign prostatic hyperplasia (BPH), inflammation, urinary tract infection, increased sexual activity, age, and cancer."  Doc. 63, ¶ 21.  On January 18, 2007, Loza received the results of his PSA test and was referred to a urologist because the test showed an elevated level of prostate specific antigens in his blood.  Doc. 67 at 3.

On January 24, 2007, Loza applied for a cancer insurance policy with American Heritage.  *Id.* at 3-4.  Loza was approved for the policy with an effective date of April 1, 2007.  Doc. 47, ¶ 69.  On May 17, 2007, Loza applied for and was granted an increase in his cancer policy, to become effective August 1, 2007.  *Id.*, ¶ 76, 82.

On May 22, 2007, Loza saw urologist Dr. John Croushore.  *Id.*, ¶ 84.  On June 4, 2007, Loza was diagnosed with prostate cancer.  Doc. 67 at 4.  On June 15, 2007, Loza filed a claim for benefits under the cancer policy.  *Id.* at 5.

Upon receiving Loza's claim, American Heritage initiated a claim investigation, during which it learned about the PSA test, which it considered to be a "diagnostic test

for . . . cancer" as contemplated by the question asked during Loza's application process. *Id.* On August 28, 2007, American Heritage denied Loza's claim and cancelled his policy on the ground that he had made a misrepresentation in his application by stating that he had not had any diagnostic test for cancer. *Id.* The claims department also determined that even if Loza's policy were valid, it would not cover his claim because Loza's prostate cancer was a pre-existing condition, which was excluded. Doc. 47, ¶ 134.

On July 21, 2008, Loza filed this lawsuit in Arizona state court alleging breach of contract, bad faith, negligent and intentional infliction of emotional distress, and requesting punitive damages. Doc. 1-2 at 3-11. American Heritage removed the case to this Court. Doc. 1.

**II.     Legal Standard.**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**III.    American Heritage's Motion for Summary Judgment.**

American Heritage moves for summary judgment on all of Loza's claims and his request for punitive damages. The Court will consider each claim in turn.

**A.     Breach of contract.**

American Heritage claims that it did not breach its insurance contract when it

denied Loza's claim because his prostate cancer was a pre-existing condition excluded from coverage.  Doc. 96 at 9-10.  The pre-existing condition exclusion in Loza's policy provides:

> **Pre-Existing Condition Limitation.** We do not pay for any loss due to a pre-existing condition as defined during the 12 month period beginning on the date that person became a covered person.

The policy further defines pre-existing condition as:

> **Pre-Existing Condition.** A disease or physical condition for which medical advice or treatment was received by the covered person during the 12 month period prior to the effective date of the covered person's coverage.

Doc. 97, ¶¶ 68, 69.

American Heritage argues that this exclusion of coverage requires only that the insured received medical advice or treatment for the claimed condition during the 12 month period prior to coverage, not that the condition be diagnosed during that time. Doc. 96 at 10.  American Heritage finds support for this position in several insurance coverage cases dealing with similar pre-existing condition clauses.  Doc. 96 at 10-11; *see McWilliams v. Capital Telecommunications Inc.*, 986 F. Supp. 920 (M.D. Pa. 1997); *Fischman v. Blue Cross & Blue Shield, Inc.*, 775 F. Supp. 513 (D. Conn. 1991); *Bartlett v. Am. Republic Ins. Co.*, 845 S.W.2d 342 (Tex. App. 1992); and *Bergan v. Time Ins. Co.*, 395 S.E.2d 361 (Ga. App. 1990).  American Heritage further argues that its exclusion clause applies because Loza received both medical advice and treatment related to his prostate cancer symptoms in the 12 months prior to coverage, even though his diagnosis was not made until after coverage went into effect. *Id.* at 10.

Loza does not dispute that a claimed condition can be excluded as pre-existing even if the diagnosis was not known prior to coverage.  Loza instead argues that the cases upon which American Heritage relies are distinguishable because in each case the insurer demonstrated that the claimant's cancer existed before the effective coverage date. Doc. 100 at 4-6.  Loza argues that American Heritage has failed to show that the

symptoms for which he received advice and treatment prior to coverage were actually the result of cancer and not the result of other medical issues also under consideration by Loza's doctor.  Doc. 100 at 4-6.

The Court agrees that the cases cited by American Heritage all involved plaintiffs who did not dispute that their claimed condition existed prior to the date of coverage.  In *McWilliams*, plaintiff had a history of lumps or growths that had always disappeared or been benign.  986 F. Supp. at 922.  A nurse practitioner discovered a growth on plaintiff's thyroid during a routine exam shortly before plaintiff's insurance coverage went into effect.  *Id.*  Plaintiff followed up by having an ultrasound and then a biopsy, but she did not suspect that the growth was cancerous.  *Id.*  The biopsy, performed after plaintiff's coverage date, revealed that it was cancerous.  *Id.*  Plaintiff's insurance company denied her claim under a clause similar to the one at issue here, which defined pre-existing conditions as those "that were being treated within 90 days prior to the date of coverage." *Id.*, *Id.* at 921.  In upholding the denial of coverage, the court distinguished these facts from other cases in which a claimant's breast cancer was hidden by a non-cancerous lump or cyst for which she was being treated prior to the coverage period – in those cases the advice and treatment centered around something other than the cancer.  In *McWilliams* there was no question that the sole lump that led to the ultrasound and biopsy was cancerous.  *Id.* at 927.

The remaining cases also show no dispute of material fact over whether the claimant actually had cancer prior to the coverage date.  *See Fischman*, 775 F.Supp at 514-15, 518 (granting summary judgment to insurance company where claimant's doctor testified at deposition, and claimant did not dispute, that rectal cancer was clearly the cause of his symptoms treated prior to coverage); *Bartlett*, 845 S.W. 2d at 348 (granting summary judgment to insurer where there was no dispute that the breast lump for which claimant was treated prior to coverage was cancerous); *Bergan*, 395 S.E. 2d at 262-63 (same for treatment of large pelvic mass where claimant did not dispute she was suffering from ovarian cancer).

The Court is not persuaded, however, that the pleadings and supporting documents in this case show a genuine dispute of fact over whether prostate cancer was the cause of the symptoms for which Loza received advice and treatment when Dr. Raymock examined him, advised him to get a PSA test, and recommended he see a urologist. The undisputed facts show that at the time of Loza's January 10, 2007 physical exam, Loza complained about his difficulties with urination and reported his father's death due to prostate cancer. Doc. 97, ¶¶ 8-9, 11. Dr. Raymock testified at deposition that Loza's urination issues were possible indicators of prostate cancer and that his family history and smoking were risk factors for prostate cancer. Doc. 97, ¶¶ 10, 15-16. Dr. Raymock also performed a rectal exam which revealed an enlarged prostate, another possible indicator of prostate cancer. Doc. 97, ¶ 17; Ex. B at 25:6-8. Dr. Raymock then ordered a PSA test which, he states in his deposition, is the beginning of the diagnostic process for prostate cancer. Doc. 97, ¶ 23; Ex. B at 10:15-23. Loza's PSA results came back 11.9 ng/mL, showing a very high level of prostate specific antigens in his blood (Doc. 97, ¶ 32), a result that Dr. Raymock testified was "worrisome" and raised a concern of possible prostate cancer (*id.*, ¶¶ 33-34). Loza admits these facts and denies only that they are evidence of a pre-existing condition because, Loza argues, these symptoms are also possible indicators of other, non-cancerous conditions. Doc. 101 at ¶¶ 10, 17, 23, 32, 33, 34, 35.

Although a high PSA result is not in itself determinative of prostate cancer, and Drs. Raymock and Croushore testified that it can represent other abnormalities (*see* Doc. 103, ¶¶ 11-12), the fact is that Loza saw Dr. Croushore in May of 2007 because of these very symptoms and was diagnosed less than two weeks later with prostate cancer (Doc. 47 at ¶ 84; Doc. 67 at 4). Loza provides no evidence that the cancer in his prostate in May was not present in January when he was experiencing physical symptoms and had an enlarged prostate and high PSA. Nor does he offer evidence that he was suffering from any other condition that would explain these symptoms. Although Dr. Raymock testified that Loza's risk factors and symptomology were possible indicators of

prostatitis, urinary tract infection, benign prostatic hypertrophy (Doc. 97-1, Ex. B at 12:4-12), infection (*Id*. at 25:4-8), bladder cancer (*Id*. at 27:4-16), and diabetes (*Id*. at 38:4-12), Loza presents no evidence that he had any of these conditions. Of all the possible causes of Loza's symptoms, only prostate cancer was diagnosed. Thus, unlike the cases cited in *McWilliams* where claimants were being treated for identifiable non-cancerous cysts or lumps that masked the actual cancer, Loza presents no evidence he had other conditions that produced the symptoms for which he received advice and referrals.

American Heritage bears the burden of showing that coverage is excluded by Loza's pre-existing condition. *Keggi v. Northbrook Property and Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App., Div. 1, 2000) ("Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion.); *Pacific Indem. Co. v. Kohlhase,* 455 P.2d 277, 279 (Ariz. Ct. App., Div. 1, 1969). To carry that burden, American Heritage has presented evidence that Loza received advice and treatment for a pre-existing condition that caused him difficulty urinating, produced an enlarged prostate, and resulted in very high PSA readings, together with evidence that Loza was diagnosed with prostate cancer when he saw a urologist to investigate these symptoms. This evidence logically leads to the conclusion that the pre-existing condition which caused Loza's symptoms was the prostate cancer found by Dr. Croushore.

Once American Heritage has presented sufficient evidence to carry its burden of proof, as it has here, Loza can defeat its motion for summary judgment only by showing that there is a genuine issue of material fact for trial. *Marshall v. UNUM Life Ins. Co.*, 13 F.3d 282, 284 (8th Cir. 1994) (regardless of who has the burden of proof of the applicability or non-applicability of the exclusion clause, the plaintiff must present a genuine issue of material fact to defeat insurance company's motion for summary judgment). To show that there is a genuine issue of material fact for trial, Loza must come forward with sufficient evidence for a reasonable jury to return a verdict in his favor. *Anderson*, 477 U.S. at 248. And yet Loza points to no evidence from which a

reasonable jury could find that his symptoms prior to coverage were caused by a condition other than prostate cancer. He correctly notes that symptoms like his can be caused by other conditions, but Loza was not diagnosed with any of those other conditions – he was diagnosed with prostate cancer – and he has presented no evidence that the symptoms that led to his prostate cancer diagnosis were in fact caused by some other condition. *See Bullwinkel v. New England Mut. Life Ins. Co.*, 18 F.3d 429, 433 (7th Cir. 1994) ("The only reasonable inference which the record in this case allows is that the lump discovered to be cancerous in September was also cancerous in July. If the Bullwinkels desired to negate this inference, or at least to create a question of fact, they should have submitted some kind of medical affidavit stating that a breast lump can be benign in one month, but cancerous two months later." (citation omitted)).

Loza argues that American Heritage cannot establish the pre-existing condition without expert testimony. The Court does not agree. The fact that he admittedly had symptoms before coverage that led directly to his cancer diagnosis after coverage provides a sufficient basis for a factfinder to conclude that the symptoms were caused by the cancer. Courts have rejected the suggestion that expert testimony is required in such cases. *See, e.g., Marshall*, 13 F.3d at 284 (rejecting argument that the record must contain an expert medical opinion specifically linking the claimed condition to a pre-existing condition – "simply because expert testimony may be used to prove a particular issue does not mean that expert testimony must be used.").

Loza argues that he had to know that his symptoms were indicative of prostate cancer or that the tests Dr. Raymock advised him to undergo were specific to a prostate cancer diagnosis before the pre-existing condition exception applies. Doc. 100 at 6-9. Loza cites to *Sanders v. CNA Group Life Assurance Co.*, in which an examining neurologist noted in his chart the possibility that Sanders had amyotrophic lateral sclerosis ("ALS"), but did not want to discuss this with Sanders prior to getting a second opinion. 322 F. Supp. 2d 1142, 1144 (D. Or. 2004). Neither Sanders nor his treating physician was aware of this notation or the possibility of ALS until after Sanders'

coverage period went into effect and he saw a second neurologist and was examined at an ALS clinic confirming an ALS diagnosis. *Id.* Sanders' policy excluded conditions for which a patient had received "consultation, care or services . . . including diagnostic measures and taking prescribed drugs and medicines" within six months prior to coverage. *Id.* at 1149. The court cited to *Hughes v. Boston Mutual Life Ins. Co.*, 26 F. 3d 264 (1st Cir. 1994), as recognizing the reasonableness of a plaintiff's position that "there should be *some awareness* on the part of the insured or his physician that the insured was being treated for the condition itself in order to trigger the exclusion." 322 F. Supp. at 1149 (paraphrasing *Hughes*, 26 F. 3d at 269; emphasis added). Following this reasoning, *Sanders* granted summary judgment for the claimant on the basis that "no genuine issue of material fact exists that indicates Sanders and his family physician . . . were aware of a potential diagnosis of ALS before the effective date of Sanders' coverage." 322 F. Supp. at 1150.

Contrary to Loza's argument, neither *Sanders* nor the case law it cites from other circuits has more precedential weight in this Court than the cases cited by American Heritage, and the Court does not find *Sanders* persuasive on these facts. Loza's policy defined a pre-existing condition as "[a] disease or physical condition for which medical advice or treatment was received by the covered person during the 12 month period prior to the effective date of the covered person's coverage." Doc. 97, ¶¶ 68, 69. It does not contain a requirement of knowledge on the part of the insured. It does not apply to a medical condition for which medical advice was "sought," a requirement that would imply some awareness on the part of the insured, but a condition for which medical advice was "received." There is no dispute that Loza "received" medical advice from Dr. Raymock concerning his symptoms, and, as discussed above, there is no reasonable dispute that the condition for which Loza received the medical advice was in fact prostate cancer.

Even if the Court were to apply *Sanders*, Loza has presented no genuine issue of material fact that he and his physician, Dr. Raymock, did not have "some awareness" of

his potential diagnosis of prostate cancer during the policy's relevant 12-month pre-coverage period. 322 F. Supp. at 1149. Loza does not deny that Dr. Raymock determined that Loza's symptoms were possible indicators of prostate cancer. Doc. 101, ¶ 10. As discussed above, Dr. Raymock was aware that Loza's urination problems, his enlarged prostate, his father's death from prostate cancer, and his high PSA count were all indicative of prostate cancer. Loza denies only that Dr. Raymock limited these symptoms specifically to prostate cancer. *Id.* Loza also denies that Dr. Raymock told Loza that prostate cancer was a possible diagnosis. *Id.*, ¶ 19. The Court agrees that Dr. Raymock's testimony is ambiguous as to whether he told Loza that prostate cancer was a possible diagnosis. *See* Doc. 97, Ex. B at 34:25-38:12. Dr. Raymock only testified that he would have told Loza he wanted to have his PSA tested because his father had prostate cancer. *Id.* at 38:1-2. The record is clear, however, that Dr. Raymock considered prostate cancer a possible explanation for Loza's symptoms. Additionally, Loza reported to a counselor shortly after his diagnosis that "deep down" he knew he had prostate cancer (Doc. 97, ¶ 105; S at SDT-CPC000014), and he later reported to Dr. Gordon Grado, an oncologist, that he started getting checkups because his father died of prostate cancer in 2005 (Doc. 97, ¶ 13; Ex. D at SDT-SOC000001). Loza does not dispute these facts, but denies that they show a temporal basis for when he came to the understanding that he might have cancer. Doc. 101, ¶¶ 13, 105. Based upon the undisputed facts that Loza's father died of prostate cancer in 2005, that Loza reported that he began getting check-ups because of his father's death, that Loza knew of his own urinary difficulties, his enlarged prostate, and his high PSA count, and that he had been referred to a urologist for further tests – all prior to the coverage period – the Court finds that a jury could not reasonably conclude that Loza had no awareness that prostate cancer was a potential diagnosis for his pre-coverage symptoms.

Because the Court finds that there is no genuine issue of material fact that Loza's prostate cancer was the cause of the multiple symptoms for which he received medical advice, testing, and referral to a urologist prior to the coverage period, the Court finds

that American Heritage's pre-existing condition clause applies. Because the Court finds that American Heritage had a valid reason for denying coverage on the basis of this clause, the Court will grant summary judgment to Defendant on Loza's contract claim.

**B.   Bad Faith.**

In Arizona, a plaintiff attempting to prove insurance bad faith must show "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). Arizona courts also recognize a claim for bad faith "if an insurer acts unreasonably in the manner in which it processes the claim" regardless of its ultimate coverage determination. *Zilisch v. State Farm Mutual Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000).

Because the Court finds that American Heritage had a reasonable basis for denying Loza coverage under its pre-existing condition exclusion – and this precludes a finding of bad faith on the coverage issue – the Court need not address whether American Heritage's denial for fraudulent representation was reasonable.[1]

Loza also argues, however, that American Heritage's motion is only for partial summary judgment because it excludes discussion of American Heritage's handling of Loza's claim, apart from its denial. Doc. 100 at 13. American Heritage replies that Loza was never involved in the claim process and that his girlfriend, Jody McCandless, who

---

[1] Even if American Heritage had based its denial of coverage solely on its claim that Loza fraudulently answered the question asking whether he was undergoing a diagnostic test for cancer, it is doubtful that this would be sufficient grounds for a bad faith claim because it, also, does not show the absence of a reasonable basis for denial of coverage. While the Ninth Circuit found that the question on the insurance application was ambiguous, it affirmed the reasonableness of American Heritage's interpretation: "[T]he medical evidence would reasonably support both [American Heritage's] broad reading of 'diagnostic test for cancer' and Loza's narrow reading of the same term, as these definitions apply to a PSA test. Further, neither interpretation conflicts with standard definitions of this term." Doc. 86-1 at 4-5. Loza argues that *Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 640-41 (Ariz. Ct. App. 2011), rejected the proposition that a favorable ruling on behalf of an insurer on a coverage issue that is then overturned by a higher court demonstrates that the coverage issue is debatable as a matter of law. Doc. 100 at 13-14. But *Lennar Corp.* does not apply here because the Ninth Circuit made its own determination that the question on the application was subject to different interpretations and stated that the insurer's interpretation was reasonable.

handled the claim for him, only complained that American Heritage denied Loza's claim and otherwise stated that American Heritage was friendly and helpful throughout the process. Doc. 106 at 9.[2] Loza points to no facts showing that American Heritage acted in bad faith in the way it handled his claim. Loza's statement of facts in response to American Heritage's motion makes only one reference to American Heritage's investigation of his claim. Loza states that American Heritage employees relied on general knowledge to determine that a PSA test is a diagnostic test for prostate cancer. Doc. 101, ¶ 167. The Ninth Circuit has already stated that American Heritage's interpretation of a "diagnostic test" was reasonable. See Doc. 86-1 at 4-5. All of Loza's other bad faith allegations have to do with the reasonableness of American Heritage's denial and not any bad faith actions in the handling of Loza's claim. Given that American Heritage had a reasonable basis for denying Loza's claim (the pre-existing condition), and absent any material facts showing that American Heritage acted unreasonably in the manner in which it processed Loza's claim, the Court finds that American Heritage is entitled to summary judgment on Loza's bad faith claim.

### C.   Negligent Infliction of Emotional Distress.

The Court previously granted summary judgment to American Heritage on Loza's negligent infliction of emotional distress claim on the basis that Arizona law requires a plaintiff to prove physical injury and that "[i]t is undisputed that Loza received no physical injury from the actions of American Heritage." *See* Doc. 73 at 9-10 (citing *Rayes v. United States*, 967 F. Supp. 1162, 1165 (D. Ariz. 1997)); *see also Keck v. Jackson*, 593 P.2d 668, 669 (Ariz. 1979) (holding that "shock or mental anguish of the

---

[2] Loza admits that McCandless faxed his claim to American Heritage. Doc. 101, ¶ 114. He neither admits nor denies that McCandless stated she had no complaints with the way American Heritage treated her, but only with its ultimate coverage determination. *Id.*, ¶ 127. His response to Defendant's statement of facts states only that he could not locate a citation to this fact in Defendant's motion. *Id.* This is not a proper response under the Court's local rules. *See* LRCiv 56.1(b) (party opposing summary judgment must indicate, with respect to every assertion of fact in the moving party's statement of facts, "whether the party disputes" the fact and, if so, cite to admissible evidence in the record supporting the opposing party's position). Given this clear requirement, the Court will treat Loza's failure to dispute this fact as an admission.

plaintiff must be manifested as a physical injury."). The Ninth Circuit noted that Arizona has recognized that "substantial, long-term emotional disturbances" constitute sufficient bodily harm to support a claim of negligent infliction of emotional distress. Doc. 86-1 at 7 (citing *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 978 (9th Cir. 2011)). The Ninth Circuit remanded to determine if Loza has "sufficient evidence of long-term emotional disturbances to support a triable issue of fact on this claim." Doc. 87-1 at 8.

American Heritage argues that there is no evidence that Loza suffered long-term emotional disturbances as a result of its denial of coverage, and Loza has produced nothing on record to support this claim since the remand. Doc. 96 at 15. American Heritage also argues that Loza's counseling records for services from April, 2007, to January, 2008, make no mention of his insurance claim as a source of emotional distress. *Id.* Loza directs the Court to his initial disclosure statement and his counseling records as evidence that creates a genuine issue of fact about whether American Heritage is liable for emotional damages. Doc. 100 at 15.

The Court finds that Loza has presented no evidence to show that he suffered either physical harm or long-term emotional disturbances due to American Heritage's actions. Loza's disclosure statement states that he "has suffered humiliation and severe physical, mental, and emotional distress and discomfort" due to American Heritage's actions. Doc. 101, Ex. L, at 4:24-26. These statements are conclusory and present no facts or evidence regarding the physical, mental, or emotional distress and discomfort that American Heritage's actions allegedly caused. Additionally, the records of Loza's counseling prior to the denial of coverage show that Loza was dealing with grief and anger over the death of his father and issues with his sister over his father's estate. Doc. 97-6. Ex., at SDT-CPC00009. He also discussed various relational issues and stresses at work and exhibited anxiety over his cancer diagnosis and upcoming surgery. *Id.* at SDT-CPT000011-16. Loza points to records from October 4, 2007, to December 3, 2007, but these records show only that his surgery was a success, that Loza had stopped drinking, that he was feeling "better and happier," and that he was "doing really well,

much less stressed, anger controlled and happy." *Id.* at SDT-CPT000017-20. Loza points to no evidence from the records that he suffered prolonged emotional distress related to American Heritage's actions. On this record, the Court concludes that there is no evidence that could lead a reasonable jury to conclude that Loza suffered physical injury or prolonged emotional disturbances due to the denial of his insurance claim. American Heritage is entitled to summary judgment on this claim.

### D. Intentional Infliction of Emotional Distress.

The Court previously granted summary judgment to American Heritage on Loza's intentional infliction of emotional distress claim on the basis that American Heritage had properly cancelled Loza's policy and he therefore had suffered no loss upon which to base this claim. Doc. 73 at 10. The Ninth Circuit remanded after reversing this Court's judgment that the cancellation was valid due to misrepresentation. Doc. 86-1 at 8. Because the Court finds that denial of coverage was valid under alternative grounds, the Court once again finds that Loza has suffered no loss upon which to base this claim.

Moreover, a plaintiff alleging intentional infliction of emotional distress in Arizona must demonstrate three elements: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to cause emotional distress or "recklessly disregarded the near certainty" that his conduct would produce such distress; and (3) the defendant's conduct actually caused severe emotional distress. *Bodett v. Coxcom, Inc.,* 366 F.3d 736, 746 (9th Cir.2004); *Ford v. Revlon,* 153 Ariz. 38, 734 P.2d 580, 585 (1987). The "extreme and outrageous element is met when a defendant's conduct is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.,* 905 P.2d 559, 563 (Ariz.App.1995) (citations omitted). Loza has presented no evidence from which a reasonable jury could find that American Heritage engaged in extreme and outrageous conduct. Defendant therefore is entitled to summary judgment on Loza's intentional infliction of emotional distress claim.

E.   **Punitive Damages.**

Because all of his other claims are being dismissed, Loza can show no actual damages on which punitive damages can stand. *See Wyatt v. Wehmueller*, 806 P.2d 870, 874 (Ariz. 1991) ("A plaintiff must be entitled to actual damages before being entitled to punitive damages."). American Heritage is entitled to summary judgment on this claim.

IV.   **Loza's Cross Motion for Partial Summary Judgment.**

Loza requests partial summary judgment on his breach of contract and bad faith claims. Doc. 102 at 1. The Court has determined that American Heritage had a valid reason for denying coverage to Loza based on the pre-existing condition clause in Loza's policy. Loza's breach of contract claim is therefore precluded. Because the Court has granted summary judgment for American Heritage on both the breach of contract and bad faith claims, the Court will deny Loza's motion for partial summary judgment.

**IT IS ORDERED:**

1. Defendant American Heritage's motion for summary judgment (Doc. 96) is **granted**.
2. Plaintiff Michael Loza's cross motion for partial summary judgment (Doc. 102) is **denied**.
3. The Clerk of the Court is directed to **terminate** this action.

Dated this 26th day of March, 2012.

David G. Campbell
United States District Judge